FILED

2016 Jan-04  PM 07:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **MICHEAL WILLIAMS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | **4:15-CV-02219-SGC** |
| | ) | |
| **LVNV FUNDING, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ANSWER OF LVNV FUNDING, LLC

COMES NOW, the Defendant LVNV Funding, LLC, by and through undersigned counsel, and replies to Plaintiff's Complaint as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction under 15 U.S.C. § 1692k(d). Venue is proper in that the Defendants transacted business in this district, and the Plaintiff resides in this district.

**ANSWER:  The Defendant does not contest jurisdiction but has insufficient information to admit venue is proper.**

## PARTIES

2.     The Plaintiff is a resident and citizen of the State of Alabama, St. Clair County, and is over the age of twenty-one (21) years.

**ANSWER:  The Defendant has insufficient information to either admit or deny this averment.**

3.     The Defendant, LVNV Funding LLC ("LVNV"), is incorporated in Delaware and was, in all respects and at all times relevant herein, doing business in the state of Alabama, and is registered to do business in Alabama with the Alabama Secretary of State. Plaintiff asserts that Defendant is regularly engaged in the business of collecting consumer debts from consumers residing in St. Clair County, Alabama and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

**ANSWER:   The Defendant admits it is incorporated in Delaware and is registered to do business in Alabama with the Alabama Secretary of State, but denies all remaining allegations in Paragraph 3 and demands strict proof thereof.**

4.     The Defendant, Resurgent Capital Services L.P. ("Resurgent"), is incorporated in Delaware and was, in all respects and at all times relevant herein, doing business in the state of Alabama, and is registered to do business in Alabama with the Alabama Secretary of State. Plaintiff asserts that Defendant is regularly engaged in the business of collecting consumer debts from consumers residing in St. Clair County, Alabama and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

**ANSWER:   This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

5.     The Defendant Mutual Management Services, LLC. ("MMS"), is incorporated in Florida and was, in all respects and at all times relevant herein, doing business in the state of Alabama. Plaintiff asserts that Defendant is regularly engaged in

the business of collecting consumer debts from consumers residing in St Clair County, Alabama and is a "debt collector," as defined by the FDCPA 15 U.S.C. § 1692a(6).

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

6.     The Defendant Trans Union, LLC (hereinafter "Trans Union") is a Delaware corporation that has a principal place of business in Illinois. Trans Union does and has at all pertinent times done business in this Judicial District. Trans Union is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f).

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

7.     The Defendant Experian Information Solutions, Inc. (hereinafter "Experian") is an Ohio corporation with its principal place of business in California. Experian does and has at all pertinent times done business in this district. Experian is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f).

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

8.     The Defendant Equifax Information Services, LLC (hereinafter "Equifax") is a Georgia Corporation with a principal place of business in the state of Georgia. Equifax does and has at all pertinent times done business in this district. Equifax is a nationwide consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f).

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

9.     Defendants LVNV, Resurgent, and MMS may be collectively known as "the Defendant Collectors".

**ANSWER:  Denied.**

10.     Defendants Experian, Trans Union and Equifax may be collectively known as "the Defendant CRAs".

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

11.     Upon information and belief, the Defendant CRAs are regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers, such as Plaintiff, for the purpose of furnishing consumer reports as defined in 15 U.S.C. §1681a(f) to third parties.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

12.     Upon information and belief the Defendant CRAs disburse consumer reports to third parties for monetary compensation.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

13.     All events herein occurred in this judicial district.

**ANSWER:  This Defendant has insufficient information to either admit or deny this averment.**

## FACTUAL ALLEGATIONS

### *Alleged LVNV Debt*

14.     On May 16, 2014, Defendant LVNV brought a lawsuit against Plaintiff in the District Court of Jefferson County, Alabama alleging it owned a delinquent account between Plaintiff and HSBC Bank Nevada, N.A., an entity not a party to this lawsuit ("the alleged LVNV debt").

**ANSWER:  This Defendant admits that on May 16, 2014, Defendant LVNV brought a lawsuit against Plaintiff in the District Court of Jefferson County, Alabama alleging Plaintiff was delinquent on his HSBC Bank of Nevada, N.A., account ending in #2166.**

15.     On May 11, 2015, the Court held a bench trial and entered judgment against then Plaintiff/now Defendant LVNV and in favor of then Defendant/now Plaintiff Micheal Williams.

**ANSWER:   On May 11, 2015, the Court held a bench trial and entered a judgment against the now Defendant LVNV without prejudice.**

16.     The text of the judgment order stated, "This case coming on for trial, Plaintiff appears through counsel and Defendant appears pro se. Judgment entered by trial for the Defendant. Order announced in open court."

**ANSWER:  The allegations in Paragraph 16 of the Complaint refer to a court record that, being in writing, speaks for itself.  To the extent the allegations in Paragraph 16 of the Complaint regarding the content of such document are inconsistent with the actual language of the document, they are denied.**

17.     Sometime after, Plaintiff reviewed his consumer credit reports produced by the Defendant CRAs and discovered the alleged LVNV debt still being reported as past due by the Defendant CRAs.

**ANSWER:  The Defendant has insufficient information to admit or deny this averment.**

18.     Plaintiff disputed the status of the alleged LVNV debt through the Defendant CRAs, individually, and requested reinvestigation. Plaintiff made the Court's judgment a part of these disputes.

**ANSWER:  The Defendant has insufficient information to admit or deny this averment.**

19.     In response to the alleged LVNV debt disputes with the CRAs, Defendant Resurgent mailed a letter to Plaintiff dated October 19, 2015.

**ANSWER:   The allegations in Paragraph 19 of the Complaint refer to a document that, being in writing, speaks for itself.  To the extent the allegations in Paragraph 19 of the Complaint regarding the content of such document are inconsistent with the actual language of the document, they are denied.**

20.     In this letter, Defendant Resurgent explained why it, on behalf of Defendant LVNV, refused to change the information provided to the CRAs.

**ANSWER:  Denied as phrased.**

21.     In part, Defendant Resurgent erroneously stated, "Our records indicate that a lawsuit, Case No. DV2014902492, was filed in Jefferson County Court, Alabama, and

was dismissed without prejudice. Due to the nature of the dismissal, the disposition of the lawsuit does not affect the collectability of the account."

**ANSWER:  Denied.**

22.    This statement was patently false and correct information was easily verifiable through the Court's records.

**ANSWER:  Denied.**

23.    Trans Union purportedly reinvestigated the Plaintiffs disputes and reported the results of its so-called reinvestigation to the Plaintiff on or about November 1, 2015.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

24.    Trans Union did not remove or correct the information on Plaintiffs Trans Union report for the alleged LVNV debt.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

25.    Defendant Experian purportedly reinvestigated the Plaintiffs disputes and reported the results of its so-called reinvestigation to the Plaintiff on or about November 9, 2015.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

26.    Defendant Experian did not remove or correct the information on Plaintiffs Experian report for the alleged LVNV debt.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

27.     Defendant Equifax purportedly reinvestigated the Plaintiffs disputes and reported the results of its so-called reinvestigation to the Plaintiff on or about October 20, 2015.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

28.     Defendant Equifax did not remove or correct the information on Plaintiffs Experian report for the alleged LVNV debt.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

29.     The inaccurate information published by the Defendant CRAs negatively reflected on Plaintiff, his financial responsibility as a debtor, and his credit worthiness.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

### *Alleged MMS Debt*

30.     In or around September 2015, Plaintiff reviewed his consumer credit reports and discovered Defendant MMS reporting an alleged debt to Woodridge Apartments in Jackson, Mississippi to the CRAs ("the alleged MMS debt").

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

31.     Since Plaintiff had never resided, executed an agreement, or had any type of relationship with Woodridge Apartments, he contacted Defendant MMS to investigate.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

32.     Ralph Ortiz ("Ortiz"), an agent of Defendant MMS, asserted that Plaintiff executed an agreement as a co-signer and was liable for the alleged MMS debt.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

33.     Ortiz sent Plaintiff a copy of the alleged executed lease "the alleged Woodridge lease").

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

34.     The alleged Woodridge lease sent to Plaintiff was executed by a different Micheal/Micheal Williams and had a different middle initial.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

35.     Plaintiff responded to Ortiz by again stating he never executed the agreement and further that the middle initial is clearly different.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

36.     However, Ortiz refused the dispute and Defendant MMS continued collection activities.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

37.     Plaintiff disputed the status of the alleged MMS debt through the Defendant CRAs, individually, and requested reinvestigation. Plaintiff made the lease with the different middle initial part of the dispute.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

38.     Trans Union purportedly reinvestigated the Plaintiffs disputes and reported the results of its so-called reinvestigation to the Plaintiff on or about November 1, 2015.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

39.     Trans Union did not remove or correct the information on Plaintiffs Trans Union report for the alleged MMS debt.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

40. Defendant Experian purportedly reinvestigated the Plaintiffs disputes and reported the results of its so-called reinvestigation to the Plaintiff on or about November 9, 2015.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

41.     Defendant Experian did not remove or correct the information on Plaintiff s Experian report for the alleged MMS debt.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

42.     Defendant Equifax purportedly reinvestigated the Plaintiffs disputes and reported the results of its so-called reinvestigation to the Plaintiff on or about October 23, 2015.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

43.     Defendant Equifax did not remove or correct the information on Plaintiff s Equifax report for the alleged MMS debt.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

44.     The inaccurate information published by the Defendant CRAs negatively reflected on Plaintiff, his financial responsibility as a debtor, and his credit worthiness.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

**COUNT ONE**

**FAIR DEBT COLLECTION PRACTICES ACT AGAINST THE DEFENDANT COLLECTORS**

45.     The Plaintiff adopts the averments and allegations hereinbefore as if fully set forth herein.

**ANSWER:  This Defendant reincorporates its previous answers as if fully set out herein.**

46.     The Defendant Collectors have engaged in collection in numerous activities and practices in violation of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.*

**ANSWER:  Denied.**

47.     As a result of the Defendants' actions, the Plaintiff is entitled to an award of statutory damages, costs, attorney fees, actual damages, and punitive damages.

**ANSWER:  Denied.**

## COUNT TWO

## NEGLIGENCE AGAINST THE DEFENDANT COLLECTORS

48.     Plaintiff adopts the averments and allegations hereinbefore as if fully set forth herein.

**ANSWER:  This Defendant reincorporates its previous answers as if fully set out herein.**

49.     Defendant Collectors knew or should have known the conduct set forth herein which was directed at and visited upon Plaintiff.

**ANSWER:  Denied.**

50.     Defendant Collectors knew or should have known that said conduct was Improper.

**ANSWER:  Denied.**

51.     Defendant Collectors negligently failed to prevent and/or participated in improper collection activities.

**ANSWER:  Denied.**

52.　　As a result of the Defendants' negligence, the Plaintiff suffered physical damage, worry, anxiety, nervousness, and mental anguish.

**ANSWER:  Denied.**

**COUNT THREE**

**RECKLESSNESS AND WANTONNESS AGAINST THE DEFENDANT COLLECTORS**

53.　　The Plaintiff adopts the averments and allegations hereinbefore as if fully set forth herein.

**ANSWER:  This Defendant reincorporates its previous answers as if fully set out herein.**

54.　　Defendant Collectors knew or should have known the conduct set forth herein which was directed at and visited upon the Plaintiff.

**ANSWER:  Denied.**

55.　　Defendant Collectors knew or should have known that said conduct was Improper.

**ANSWER:  Denied.**

56.　　Defendant Collectors recklessly and wantonly failed to prevent and/or participated in improper collection activities.

**ANSWER:  Denied.**

57.     As a result of the Defendants' reckless and wanton conduct, the Plaintiff suffered physical injury, worry, anxiety, nervousness, and mental anguish.

**ANSWER:  Denied.**

## COUNT FOUR

## NEGLIGENT TRAINING AND SUPERVISION AGAINST THE

## DEFENDANT COLLECTORS

58.     The Plaintiff adopts the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

**ANSWER:  This Defendant reincorporates its previous answers as if fully set out herein.**

59.     The Defendant Collectors knew or should have known the status of the alleged debt and of the conduct set forth herein which was directed at and visited upon the Plaintiff.

**ANSWER:  Denied.**

60.     The Defendant Collectors knew or should have known that said conduct was improper.

**ANSWER:  Denied.**

61.     The Defendant Collectors negligently failed to train and supervise collectors in order to prevent said improper conduct.

**ANSWER:  Denied.**

62.    The Defendant Collectors negligently failed to train and supervise collectors on the FDCPA as it relates to consumer's accounts.

**ANSWER:  Denied.**

63.    As a result of the Defendants' negligence, the Plaintiff suffered physical injury, worry, anxiety, nervousness, and mental anguish.

**ANSWER:  Denied.**

## COUNT FIVE

## RECKLESS AND WANTON TRAINING AND SUPERVISION AGAINST

## THE DEFENDANT COLLECTORS

64.    The Plaintiff adopts the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

**ANSWER:  This Defendant reincorporates its previous answers as if fully set out herein.**

65.    The Defendant Collectors knew or should have known the status of the alleged debts and of the conduct set forth herein which was directed at and visited upon the Plaintiff.

**ANSWER:  Denied.**

66.    The Defendant Collectors knew or should have known that said conduct was improper.

**ANSWER:  Denied.**

67.    The Defendant Collectors recklessly and wantonly failed to train and supervise collectors in order to prevent said improper conduct.

**ANSWER: Denied.**

68.     The Defendant Collectors recklessly and wantonly failed to train and supervise collectors on the FDCPA as it relates to consumer's accounts.

**ANSWER: Denied.**

69.     As a result of the Defendants' recklessly and wanton conduct, the Plaintiff suffered physical damage, worry, anxiety, nervousness, and mental anguish.

**ANSWER: Denied.**

## COUNT SIX

## INVASION OF PRIVACY AGAINST THE DEFENDANT COLLECTORS

70.     The Plaintiff adopts the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

**ANSWER:  This Defendant reincorporates its previous answers as if fully set out herein.**

71.     Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the FDCPA, when it stated as part of its findings:

> Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. 15 U.S.C. § 1692(a) (emphasis added).

**ANSWER:  This Defendant pleads the content of the FDCPA is the best evidence of its meaning and denies the section of the FDCPA is applicable to this case.**

72.     The Defendant Collectors undertook and/or directed communications to the Plaintiff constituting an invasion of privacy, as set out and described in the common law

of the State of Alabama. Said communications were made in disregard for Plaintiff s right to privacy. Said communications were made to force, coerce, harass, embarrass and/or humiliate the Plaintiff into paying a debt.

**ANSWER:  Denied.**

73.    Said invasions were intentional, willful, and malicious, and violated Plaintiff's privacy. Plaintiff avers that the communications were made by individuals who were the employees of and/or acting on behalf of Defendant.

**ANSWER:  denied.**

74.    Said communications constitute the wrongful intrusion into their solitude and seclusion.

**ANSWER:  Denied.**

75.    As a result of the Defendants' conduct, the Plaintiff suffered physical damage, worry, anxiety, nervousness, and mental anguish.

**ANSWER:  Denied.**

**COUNT SEVEN**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST**

**THE DEFENDANT COLLECTORS**

76.    The Plaintiff adopts the averments and allegations of all the above paragraphs hereinbefore as if fully set forth herein.

**ANSWER:  This Defendant reincorporates its previous answers as if fully set out herein.**

77.     The Plaintiff alleges that the Defendant Collectors' actions alleged were done willfully, maliciously, outrageously, deliberately, and purposely with the intention to inflict emotional distress upon the Plaintiff and/or were done in reckless disregard of the probability of causing the Plaintiff emotional distress, and these acts did in fact result in severe and extreme emotional distress.

**ANSWER:  Denied.**

78.     As a result of the Defendants' conduct, the Plaintiff suffered physical damage, worry, anxiety, nervousness, and mental anguish.

**ANSWER:  Denied.**

**COUNT EIGHT**

**VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681
ET SEQ. AGAINST THE DEFENDANT CRAS**

79.     The Plaintiff adopts the averments and allegations hereinbefore as if fully set forth herein.

**ANSWER:  This Defendant reincorporates its previous answers as if fully set out herein.**

80.     The Defendant CRAs violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files they publish and maintain concerning the Plaintiff.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

81.     The Defendant CRAs violated 15 U.S.C. §1681i by failing to delete inaccurate information in the Plaintiff s credit file after receiving actual notice of such inaccuracies; by failing to conduct a reasonable and lawful reinvestigation; by failing to forward all relevant information to the furnishers; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

82.     As a result of this wrongful conduct, action and inaction of the Defendant CRAs, the Plaintiff suffered damage including but not limited to loss of credit, loss of the ability to purchase and benefit from credit as well as mental and emotional pain and anguish, humiliation and embarrassment.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

83.     The Defendant CRAs' conduct was willful, rendering this Defendant liable for punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendant CRAs were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

84.     The Plaintiff is entitled to recover costs and attorney's fees from the Defendant CRAs in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**ANSWER:  This averment is not against this Defendant and therefore does not require a response.  To the extent a response is required, denied.**

## COUNT NINE

## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681

## ET SEQ. AGAINST DEFENDANTS LVNV AND MMS

85.     Plaintiff adopts the averments and allegations hereinbefore as if fully set forth herein.

**ANSWER:  The Defendant reincorporates its previous answers as if fully set out herein.**

86.     Defendants LVNV and MMS violated the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b) by continuing to publish to the Defendant CRAs inaccurate information regarding status of an account; by failing to fully and properly investigate the Plaintiffs  dispute; by failing to review or consider all relevant information regarding same; by failing to accurately respond to the Defendant CRAs; by failing to correctly report results of an accurate investigation to all credit reporting agencies; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the Defendants LVNV and MMS representations to the consumer reporting agencies.

**ANSWER:  Denied.**

87.     After receiving notification from the Defendant CRAs about Plaintiff's disputed account, Defendants LVNV and MMS did not contact any third parties other than the Defendant CRAs when investigating Plaintiff s dispute.

**ANSWER: Denied as phrased.**

88.     As a result of Defendants LVNV and MMS's wrongful conduct, action and inaction, the Plaintiff suffered damage including but not limited to loss of credit, loss of the ability to purchase and benefit from credit as well as mental and emotional pain and anguish, humiliation and embarrassment.

**ANSWER: Denied.**

89.     Defendants LVNV and MMS's conduct, action and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by a struck jury pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants LVNV and MMS were negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. §16810.

**ANSWER: Denied.**

90.     The Plaintiff is entitled to recover costs and attorney's fees from Defendants LVNV and MMS in an amount to be determined by-the Court pursuant to 15 U.S.C. §1681n and §1681o.

**ANSWER: Denied.**

As to the unnumbered paragraph following Paragraph 90, this Defendant denies Plaintiff is entitled to the relief requested and demands strict proof thereof.

## AMOUNT OF DAMAGES DEMANDED

As to the unnumbered paragraph following Paragraph 90, this Defendant denies Plaintiff is entitled to the relief requested and demands strict proof thereof.

## AFFIRMATIVE DEFENSES

1.     The Defendant pleads the complaint fails to state a claim or cause of action upon which relief can be granted.

2.     The Defendant denies any violation of the FDCPA and demands strict proof thereof.

3.     The Defendant denies the Plaintiff has suffered any damages as a result of any act, error, or omission of this Defendant.

4.     The Defendant pleads the statute of limitations.

5.     The Defendant pleads failure to mitigate damages.

6.     The Defendant pleads contributory negligence, to avoid waiver.

7.     The Defendant denies it took any action to intentionally harm the Plaintiff and at all times acted in good faith, without malice or the intent to injure, and based on the information known to it.

8.     Plaintiff's right to recover, if any, is limited to the FDCPA, FCRA, or both; the Defendant specifically denies any violation of those acts.

9.     The Defendant pleads privilege, qualified privilege and conditional privilege.

10.     Punitive damages are not allowed under the Fair Debt Collection Practices Act; therefore, Defendant denies Plaintiff is entitled to punitive damages.

11.     Defendant denies it is guilty of conduct referable to which punitive damages could or should be award, and denies that Plaintiff has produced clear and convincing evidence sufficient to support or sustain to support or sustain the imposition of punitive damages against Defendant.

12.     Plaintiff cannot recover punitive damages against Defendant because such an award, which is penal in nature, would violate Defendant's constitutional rights protected under the Alabama Constitution of 1901, as amended and the Constitution of the United States unless Defendant is afforded the same procedural safeguards as are criminal defendants, including, but not limited to, the right to avoid self-incrimination, the right to forego production and disclosure of any incriminating documents, and the right to the requirement of a level of proof beyond a reasonable doubt.

13.     Subjecting Defendant to punitive damages, or affirming an award of punitive damages against Defendant in this case, would amount to and constitute a denial of due process as afforded by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and by the Due Process Clause of Article 1, Section 13 of the Alabama Constitution, as a deprivation of property without due process, or standards or criteria of due process, based upon the following grounds and circumstances, separately and severally assigned:

(a)     any award of punitive damages against Defendant under the evidence in this case would necessarily be based upon an evidentiary standard less than a standard of proof of beyond a reasonable doubt;

(b)     there is a lack of reasonable standards necessary to instruct the jury on the propriety and amount of any punitive damages award, and such award is subject to no predetermined limits;

(c)     use of the Alabama Pattern Jury Instructions in instructing the jury as to the award of punitive damages, and the amount of such an award, does not provide sufficient guidance or standards for the award or amount of punitive damages;

(d)     any punitive damages award would not be subject to post trial and appellate review on the basis of suitable and sufficient objective standards and criteria;

(e)     the power and authority imposed upon the jury under Alabama law as to the amount of punitive damages award is so relatively unfettered that there is lacking any reasonable or logical standard, uniform criteria, or guidance in the assessment of the amount of the award of punitive damages;

(f)      under Alabama law and procedure, there is no objective, logical, or rational relationship between the award, or the amount of the award, of punitive damages and the alleged wrongful or culpable conduct;

(g)     under Alabama law and procedure, there is no objective, logical, or rational relationship between the award, or the amount of the award, of punitive damages and the interests or goals of the State of Alabama referable to the imposition or allowance of punitive damages;

(h)     under Alabama law and procedure, there is no objective or rational criteria for the amount of the award of punitive damages as relates or compares to the assessment of compensatory damages, or amount of compensatory damages;

(i)      an award of punitive damages should not be permitted to be assessed against Defendant for unauthorized acts of an agent or agents without any additional requirement of knowledge or fault on the part of Defendant;

(j)      an award of punitive damages should not be permitted to be assessed against Defendant vicariously as a principal without any further proof of independent, wrongful conduct or ratification by Defendant;

(k)     Alabama procedures, pursuant to which amounts of punitive damages are awarded, permit the imposition of different penalties for the same or similar acts;

(l)      under Alabama law and procedures governing the award and assessment of punitive damages, there is no objective, logical, or reasonable standard or criteria which governs the award, or the amount of the award, of punitive damages;

(m)    the procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against Defendant;

(n)     the procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

(o)     the procedures pursuant to which punitive damages are awarded fail to  provide a clear post-trial or appellate standard of review for an award of punitive damages;

(p)     the procedures pursuant to which punitive damages are awarded may permit the admission of evidence relative to punitive damages in the same proceedings during which liability and compensatory damages are determined; and

(q)     an award of punitive damages would constitute an arbitrary and capricious taking of property of Defendant without due process of law.

14.    Plaintiff is not entitled to punitive damages from Defendant pursuant to the facts as alleged in Plaintiff's Complaint.

15.    Plaintiff's claim for punitive damages against Defendant is barred by the Fourteenth Amendment to the United States Constitution and by the Alabama Constitution.

16.     Imposition of punitive damages in this case against Defendant would contravene the Commerce Clause of the United States Constitution in that such an award would constitute, if imposed, an undue and unreasonable burden on interstate commerce.

17.     To award punitive damages against Defendant in this case would have a chilling effect upon Defendant's rights to open access to the courts of this State, in violation of the United States Constitution and the Alabama Constitution, separately and severally.

18.     In the event that any portion of a punitive damages award against Defendant in this case were to inure to the benefit of the State of Alabama, or any governmental or private entity other than plaintiffs, such an award would violate the Excessive Fines Clause of the Eighth Amendment to the United States Constitution and Article 1, Section 15, of the Alabama Constitution.

19.     To award punitive damages against Defendant in this case would violate the Contracts Clause of Article 1, Section 10 of the United States Constitution, as an award of punitive damages would impair contractual obligations.

20.     Based upon Alabama procedures relative to punitive damages, which provide no objective, logical, or reasonable standards or criteria which govern the award, and the amount of the award, of punitive damages, Defendant is denied equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution, and Article 1, §§ 1, 6, and 22 of the Alabama Constitution, separately and severally.

21.     Plaintiff's claim for punitive damages violates the rights of Defendant to due process and equal protection of the law as guaranteed by the United States Constitution and the Alabama Constitution in that the procedure for post-trial review of punitive damages set forth in Hammond v. City of Gadsden and Green Oil Company v. Hornsby is unconstitutionally vague and inadequate in the following respects:

(a)     The Hammond and Green Oil procedure provides no clearly defined standard for courts to apply in reviewing punitive damages;

(b)     The Hammond and Green Oil procedure provides inadequate review as to the need to deter, whether deterrence has been accomplished, and whether punishment is appropriate;

(c)     The Hammond and Green Oil procedure provides inadequate review and a vague standard regarding the relationship of the punitive damage award to the harm;

(d)     The Hammond and Green Oil procedure does not address nor cure the lack of guidelines given the jury in the assessment of punitive damages;

(e)     This procedure is inadequate in that the trial court according to Hammond and Green Oil "may" take certain factors into account and these procedures lack predictable and objective standards of review, allow for inconsistent application of the factors, and allow for unpredictable and inconsistent results; and

(f)     The Hammond and Green Oil procedure fails to provide definite and meaningful constraints on jury discretion in awarding punitive damages.

22.     Plaintiff's claim for punitive damages cannot be upheld to the extent it violates or contravenes the holding of the United States Supreme Court in ruling on the

case of <u>BMW of North America. Inc. v. Gore</u>, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (May 20, 1996).

23.     The demand for punitive damages in the instant case is subject to these limitations established by the Alabama legislature and set forth in Section 6-11-21, Code of Alabama, as amended.

24.     The Alabama Supreme Court's action in abolishing the legislatively created cap on punitive damages was unconstitutional and without effect. Under the United States Constitution, and the Constitution of the State of Alabama, the Alabama Supreme Court cannot abolish the punitive damages cap created by the legislature through judicial fiat. <u>Honda Motors Co. v. Oberg</u>, 512 U.S. 415, 431 (1994).

25.     If multiple punitive damage awards were assessed against Defendant it would violate the Constitution of the United States and the State of Alabama, violating Defendant's rights to due process and to a jury trial and violating Defendant's right against double jeopardy.

26.     The Defendant pleads the Plaintiff's damages, if any, were caused by the acts, errors or omissions of third parties for which this Defendant has no legal control or liability.

27.     The Defendant pleads it acted at all times in compliance with applicable law, including the FDCPA and FCRA.

28.     Defendant pleads the general issue.

29.     The Defendant pleads some or all claims are preempted by applicable federal law, including specifically the FCRA, but not only the FCRA.

30.     The Defendant pleads Plaintiff lacks standing under the FCRA.

31.     The Defendant asserts all applicable affirmative defenses available in Federal Rule of Civil Procedure 8(c).

32.     The Defendant asserts all applicable affirmative defenses available in Federal Rule of Civil Procedure 12(b).

33.     The Defendant denies it is a debt collector, but, to avoid waiver, pleads all available defenses pursuant to the Fair Debt Collection Practices Act, including the bona fide error defense.

34.     The Defendant pleads improper venue and forum non conveniens to avoid waiver.

35.     The Defendant pleads Plaintiff may be contractually obligated to arbitrate any dispute, claim or controversy which arises out of the transaction that is the subject matter of the instant litigation.

36.     Defendant pleads it took no action to cause intentional injury to the Plaintiff and at all times acted in good faith and without malice, knowledge of wrongdoing, recklessness, or willfulness.

37.     LVNV did not act as a "debt collector" in this matter, as that term is defined by the FDCPA, and Plaintiff's claim fail as a result.

38.     The Defendant reserves the right to assert additional affirmative defenses as discovery continues.

## PRAYER FOR RELIEF

WHEREFORE, LVNV prays for an order and judgment of this Court in its favor and against Plaintiff as follows:

1.     Dismissing all causes of action against it with prejudice and on the merits; and

2.     Awarding it such other and further relief as the Court deems just and equitable.

Respectfully submitted,

/s/ Neal D. Moore, III
Neal D. Moore, III
Tina Lam
*Attorneys for Defendant*
*LVNV Funding, LLC*

**OF COUNSEL:**

FERGUSON, FROST, MOORE & YOUNG, LLP
Post Office Box 430189
Birmingham, Alabama  35243-0189
Telephone:   (205) 879-8722
Facsimile:   (205) 879-8831
Email:       ndm@ffmylaw.com
Email:       lam@ffmylaw.com

## CERTIFICATE OF SERVICE

This is to certify that on the 4th day of January, 2016, a copy of the foregoing document was served upon counsel for all parties to this proceeding by the following method:

    _____             mailing the same by first-class United States mail, properly addressed and postage pre-paid

    _____             hand delivery

    _____             via facsimile

     X              E-File to:


W. Whitney Seals, Esq.
PATE & COCHRAN, LLC
P.O. Box 10448
Birmingham, AL  35202-0448
filings@plc-law.com
Attorney for Plaintiffs

John C. Hubbard, Esq.
JOHN C. HUBBARD, LLC
P.O. Box 953
Birmingham, AL  35201
jch@jchubbardlaw.com
Attorney for Plaintiffs

                                       /s/ Neal D. Moore, III_____
                                       OF COUNSEL